BENAJAH COMSTOCK, Respondent, *v.* WILLIAM P. JOHNSON and PARLEY JOHNSON, Appellants.

The rule, "that he who asks equity must do equity," will be applied where an adverse equity grows out of the controversy before the court, or out of circumstances which the record shows to be a part of its history, or where it is so connected with the cause as to be presented in the pleadings, and proofs, with full opportunity afforded the party thus recriminated, to explain or refute the charges.

Defendant's ancestor conveyed to plaintiff's grantor certain real estate, on which stood a carding machine and clothing works, and shops; and also granted the privilege of drawing from their dam a sufficient quantity of water "for the use of said works." From the time of the grant, and for more than forty years, an open space in front of the mill, which belonged to defendants, had been used for piling and sawing wood for the use of the mill. Plaintiff placed thereon a buzz-saw propelled by the water from defendant's dam. Defendant thereupon, shut off the water, and

plaintiff obtained judgment, enjoining defendants from depriving him of the water to which he was entitled under his deed.

*Held*, that the words used in the grant under which plaintiff held, were to be taken as a measure of quantity, and did not limit the use of the water to the particular machinery specified, and his use of the water to propel the buzz-saw did not work a forfeiture of the grant of the right to its use. But that plaintiff was not authorized, in erecting any machinery upon the land in front of his mill not necessary for its use as it had been used, and was in the wrong in placing and using the buzz-saw thereon. Judgment, therefore, modified so as to enjoin plaintiff from so using the buzz saw.

(Argued November 22d, 1871; decided December 12th, 1871.)

APPEAL from judgment of the General Term of the Supreme Court in the sixth judicial district, affirming judgment in favor of plaintiff entered upon the decision of the court at Special Term.

This action was brought to restrain the defendants from diverting or withholding the waters of their mill-dam and flume on the Oaks creek, in the town of Otsego, from flowing to the carding machine and fulling mill of the plaintiff, situate on said creek below said mill-dam.

Prior to the 24th of January, 1824, William Johnson and James Johnson were the owners of lands on both sides of said creek, upon which were a dam, grist-mill, a saw-mill and a carding machine and clothing works, all run by water power from the same dam, and all owned by said Johnsons. On the 24th of January, 1824, the Johnsons conveyed to one Plumb the carding machine and clothing works, and the land whereon they stood, the terms of the deed in respect to the subject of the conveyance being as follows:

"Those certain pieces or parcels of land with the messuages and tenements thereon, situate, lying and being in the town of Otsego, aforesaid, and being the same on which the carding machine, and clothing works and shops, now occupied, etc., now stand, with the privilege of drawing from some convenient place from the mill-dam, situate on Oaks creek, immediately above said carding machine and clothing works, a sufficient quantity of water for the use of said

works, provided, nevertheless, that said works do not draw more than a fair proportion of the water from the grist-mill, which is situated on the same dam; that is, in time of scarcity of water, the said works shall be permitted to card and full the same length of time that the grist-mill grinds, and provided that no more machinery shall be put in operation for carding than a breaker, a roller, a picker, all to be single, together with the hereditaments and appurtenances thereunto belonging or appertaining; the grist-mill to have all the water on Sundays, except what will be necessary to scour cloth."

Plumb entered into possession of said carding machine and clothing works at the date of the deed to him, and used the open ground in front of the same, as a means of access thereto, and for piling wood for the works, and continued to occupy and enjoy the same until April 1st, 1842, when he conveyed the same premises and rights to the plaintiff, by a deed describing the subject of conveyance in the same manner as in the said deed to him, from the date of which deed to the time of the trial, the plaintiff has been in possession of the premises so occupied by said Plumb, occupying and enjoying them in the same manner. For about nine years past, the plaintiff has discontinued his fulling works, but still runs his carding machines with the water drawn from said dam.

For about the same length of time, and since the discontinuance of the clothing works, the plaintiff has every spring drawn water for a few days from the dam, for the purpose of operating a buzz or circular saw for sawing his own (and last spring his son's) firewood, and has been accustomed to run said saw, and saw wood in front of the clothing works and carding machine shop, about thirteen and one-fourth feet from the same, upon the open grounds in front of the same, being land not conveyed to said Plumb or to the plaintiff, but which belongs to the defendants, and constituting a part of their grist-mill yard, where teams of customers drive up to the grist-mill, and the clothing and carding machine

works, and have been so used since the giving of said deeds. The saw was placed at a point thirteen and one-fourth feet from the center of the highway leading across the creek, and horses going to the plaintiff's grist-mill, and along the said highway, were sometimes frightened by plaintiff's saw.

Less water was used by plaintiff in operating his saw than was necessarily used for operating his mill before it ran down.

On the 13th of April, 1867, the plaintiff was running his saw as aforesaid, when the defendants shut off the water from the plaintiff so that he could not run so much, claiming that he, the plaintiff, had no right to the water for that purpose. They also shut the water off from the carding machine, by firmly nailing a plank over the mouth of the trunk conveying the water from the big flume to the carding machine, declaring to the plaintiff at the same time, that he had forfeited his right to the water.

*L. I. Burditt,* for appellants. " He who seeks equity must do equity." (*Tripp* v. *Cook,* 26 Wend., 143, 160 ; *Bruen* v. *Hone,* 2 Barb., 586, 587 ; *Ludden* v. *Hepburn,* 3 Sandf., 668, 671 ; 5 How., 188; *Beekman Fire Ins. Co.* v. *First M. E. Church, N. Y.,* 29 Barb., 658, 660.) The running of the saw by plaintiff was a nuisance. (*Northrop* v. *Burrows,* 10 Abb., 365.) Defendants had a right to have an injunction restraining such nuisance. (*Howard* v. *Lee,* 3 Sandf., 281 ; *Peck* v. *Elder,* 3 Sandf., 126, and note at page 129.) The grant to plaintiff limits the purposes for which, and the place where the water was to be used. (Washburne on Easements, 2d ed., marg. page, 277 ; also see *Akley* v. *Pease,* 18 Pick., 268 ; *Shed* v. *Leslie,* 22 Vt., 498 ; *Garland* v. *Hodson,* 46 Maine, 511 ; *Deshon* v. *Porter,* 38 Maine, 289 ; *Strong* v. *Benedict,* 5 Conn., 210 ; *Cromwell* v. *Loomis,* 5 Seld., 423 ; *Wakely* v. *Davidson,* 26 N. Y.) The license to take water from the flume was parol and revocable. (*Mumford* v. *Whitney,* 15 Wend., 381; *Babcock* v. *Utter,* 32 How., 439 ; *Eggleston* v. *N. Y. and H. R. R. Co.,* 35 Barb., 162 ;

Washb. Real Property, 399.) If the evidence does not warrant the decision of the court below, this court will reverse it. (*Casler* v. *Shipman*, 35 N. Y., 533.)

*E. Countryman*, for respondent. The grant to plaintiff, as allowing a sufficient quantity of water for the use of his works. (*Cromwell* v. *Selden*, 3 N. Y., 253, 255; *Wakely* v. *Davidson*, 26 N. Y., 387, 394; *Olmstead* v. *Loomis*, 6 Barb., 152, 159; 9 N. Y., 427; *Fisk* v. *Wilbur*, 7 Barb., 395, 402.) The grant was absolute of the right to use a specified quantity of water for any purpose. (*Wakely* v. *Davidson*, 26 N. Y., 387, 394; *Olmstead* v. *Loomis*, 9 N. Y., 423, 427; *Borst* v. *Empie*, 5 N. Y., 33, 40; *Cromwell* v. *Selden*, 3 N. Y., 253, 256, 257.) Plaintiff was not limited to the particular mill or site in question. (*Hurd* v. *Curtis*, 7 Met., 94; Angell on Watercourses, §§ 146, 228; *Whittier* v. *Cocheco Manf. Co.*, 9 N. H., 454.) The deeds passed to the grantees all the land used with the mill and essential to its enjoyment. (*Blaine's lessee* v. *Chambers*, 1 Serg. & Rawle, 169; *Whitney* v. *Olney*, 3 Mason, 280; *Oakley* v. *Stanley*, 5 Wend., 523; Angell on Watercourses, §§ 155-159; 2 Kent's Commentaries, 420 and 1 marg.; 4 Kent's Commentaries, 467 marg.; *Huttemeier* v. *Albro*, 18 N. Y., 48, 51; *United States* v. *Appleton*, 1 Sumner, 492; *N. Ips. Factory* v. *Batcheldor*, 3 N. H., 190; *Hammond* v. *Zehnee*, 21 N. Y., 118.) Even if plaintiff was a trespasser on defendants' lands, they had no right to shut off the water. (*Belknap* v. *Trimble*, 3 Paige, 577; *Casler* v. *Shipman*, 35 N. Y., 533; Angell on Watercourses, §§ 445-447; 2 Story's Eq. Juris., § 927; *Olmstead* v. *Loomis*, 9 N. Y., 423; *Corning* v. *Troy Iron and Nail Factory*, 40 N. Y., 191.) Nor if the running of the saw by plaintiff was a nuisance. (*Harrower* v. *Ritson*, 37 Barb., 301.) Defendants' requests to charge were properly refused. (*Manley* v. *Ins. Co. of N. America*, 1 Lans., 20; *Casler* v. *Shipman*, 35 N. Y., 533.)

CHURCH, Ch. J. The principal question in this case, involving the construction of the grant of water, was correctly

decided in the court below. It is well settled in this State that the terms used in this grant are to be taken as a measure of the quantity of water granted, and not a limitation of the use to the particular machinery specified. (*Wakely* v. *Davidson*, 26 N. Y., 387; *Cromwell* v. *Selden*, 3 id., 253.) It was found by the court that, at the time the defendant shut the water off, he asserted that the plaintiff had forfeited his right to the water, and claimed a right to shut it off. In this he was mistaken. In depriving the plaintiff of the use of the water under an assertion of forfeiture, he rendered himself amenable to the process of the court for the protection of the plaintiff's rights. The judgment enjoining the defendants from depriving the plaintiff of the quantity of water to which he was entitled under his deed, cannot be disturbed. The only serious question in the case relates to the use of the buzz saw in front of the mill. The plaintiff did not, by his deed, acquire the title to the land in front of the mill, because the description is limited to the land upon which the mill stands; but he did acquire an easement in such land for the purpose of ingress and egress, and also for the purpose of piling and sawing wood for the use of the mill, as it had been used and enjoyed for forty years. Everything necessary for the full and free enjoyment of the mill passed as an incident, appurtenant to the land conveyed. (2 Kent's Com., 467; *Blaine's Lessee* v. *Chambers*, 1 Serg. & Rawle, 174.) But this would not authorize the plaintiff to erect and use machinery upon this land not necessary to the use of the mill, as it had been used, and would not authorize the use of the buzz saw upon that land. The objection is not that the plaintiff propelled the buzz saw with the water from the dam, as he had the right to use the water for any machinery and in any place which he was entitled to occupy; but he could not occupy the space in front of the mill for that purpose. At the time the water was shut off by the defendants, it was being used only to propel this saw; and it is claimed that the defendants were justified in shutting off the water from that machinery, and for that reason the judgment should be

reversed, or, at least, that it should be modified so as to restrain the plaintiff from using his buzz saw on the defendants' premises. As we have seen, the judgment against the defendants is fully warranted by the findings; and the question is, whether any modification should be made against the plaintiff. It is a rule of equity that he who asks equity must do equity. The plaintiff was in fault in using the buzz saw on the defendants' premises. It is said that this was an independent transaction, for which the defendants might have an action; and this was the view of the court below. The rule referred to will be applied when the adverse equity grows out of the very controversy before the court, or of such circumstances as the record shows to be a part of its history, or is so connected with the cause in litigation as to be presented in the pleadings and proofs, with full opportunity afforded to the party thus recriminated to explain or refute the charges. (*Tripp* v. *Cook*, 26 Wend., 143; *McDonald* v. *Neilson*, 2 Cow., 190; *Casler* v. *Shipman*, 35 N. Y., 533.)

All the facts connected with the right of the plaintiff to use the buzz saw were not only spread out upon the record, but were in fact litigated upon the trial, and, as to his strict legal rights, are undisputed; and we cannot say that, but for his use of the saw on the defendants' premises, the water would not have been shut off. Whether this was so or not, the controversy in relation to his right to use the saw was involved in the litigation, and was intimately connected with the wrongful act of the defendants; and, being so, it is proper to apply the equitable rule. It is not indispensable to the application of this rule that the fault of the plaintiff should be of such a character as to authorize an independent action for an injunction against him. The plaintiff, in strictness, was in the wrong in placing his buzz saw in front of the mill. The defendants were in the wrong in shutting off the water, and especially in asserting a forfeiture; and, as both parties are in court to insist upon their strict legal rights, we think substantial justice will be done by modifying the judgment so as to enjoin the plaintiff from using the buzz saw on the

land in front of his mill, and, as modified, judgment affirmed, without costs to either party against the other in this court.

All concur.

Judgment accordingly.