FIELDS *v.* DANENHOWER.

Opinion delivered June 11, 1898.

1.  MORTGAGE SALE—REDEMPTION.—Under the statute providing that real property sold under a power contained in a mortgage "may be redeemed by the mortgagor at any time within one year from the sale thereof by payment of the amount for which said property is sold, together with

ten per cent interest thereon, and costs of sale" (Sand. & H. Dig., §
5111), the redemption of land sold for less than the mortgage debt re-
stores the land to the mortgagor relieved of both the sale and the mort-
gage lien.   (Page 395.)

2. SAME—SUFFICIENCY OF TENDER.—Where mortgaged land was sold to
the mortgagee under the power contained in the mortgage for a sum
less than the amount of the mortgage debt, and it was a controversy
between the parties to the mortgage whether a redemption from such
sale would relieve the land from the mortgage lien, a tender of the
amount necessary to redeem under the statute is invalid when it was
made upon condition that the mortgagee should waive any claim to
a lien upon the property by virtue of the mortgage.   (Page 400.)

Appeal from Lee Circuit Court.

HANCE N. HUTTON, Judge.

STATEMENT BY THE COURT.

Action of ejectment by F. C. Danenhower against Richard
Fields and Jack Dawson to recover possession of a tract of
land held by defendants.

The land was formerly owned by F. Trunkey, and he sold
and conveyed the land to defendants, Field and Dawson,
upon credit, for the sum of $1,381.   To secure payment of the
purchase price, Fields and Dawson executed and delivered a
deed of trust to R. D. Griffis, as trustee, with power of sale.
The debt not being paid, the trustee sold the land under the
power contained in the deed, and, Trunkey having died, the
land was purchased by his widow and heirs for the sum of $900,
leaving several hundred dollars of the purchase price still un-
paid.   The trustee conveyed the land to the widow and heirs of
Trunkey, and they in turn sold and conveyed the land to Danen-
hower.   Within one year from the date of the sale by the
trustee, the attorney of defendant Fields, who had purchased
the interest of Danenhower in the land, tendered to the attorney
of Danenhower and the Trunkeys, who was authorized to re-
ceive same, $1,000, to redeem the land from the sale under the
deed of trust.   But this tender was made on the condition that
the attorney for Danenhower and the Trunkeys would execute a
receipt for his clients releasing the lands from all liens held by
either Danenhower or the Trunkeys.

The attorney for Danenhower and the Trunkeys admitted
that Danenhower and the Trunkeys had no other claim or lien

on the land except such as were claimed by virtue of the trust deed, and admitted that the $1,000 was sufficient to cover the amount of the purchase price for which said land sold at the sale under the trust deed, together with interest at ten per cent. thereon and costs of sale, and offered to accept the same as a redemption from said sale, but contended that, to release the land from the lien of the mortgage, it was necessary to tender, not only the amount for which the land was sold under the trust deed, interest and costs, but also the balance of the mortgage debt remaining unpaid; and he declined to execute the receipt or accept the tender on the conditions imposed, solely because the effect of the execution of the receipt and the acceptance of the tender would be the absolute redemption of said lands from the mortgage lien.

The answer of the defendants set up this tender as a defense to the action of ejectment, stated that thay had at all times been ready and willing to pay it, and offered to bring the money into court. The finding and judgment of the· circuit court was in favor of plaintiff.

*Jas. P. Brown*, for appellant.

Payment or tender of the amount brought by land, at a foreclosure sale under a mortgage, with interest and costs thereon, at any time within a year after foreclosure is sufficient to affect absolute redemption (Sand. & H. Dig., § 5111); and this redemption is of the title itself, and hence does not revive the old equity of redemption and its accompanying mortgage lien. 10 S. W. 642; 15 N. W. 421; 6 N. W. 274; 7 N. W. 578; 22 C. C. A. 16; Jones, Mort. § 1051c; 57 Ark. 533. Where there is no controversy between the debtor and creditor as to the amount due, but only as to a legal right which might inure to the debtor by virtue of his making the payment, the fact that the debtor demanded, at the time of tender, a receipt showing full redemption from the lien of the mortgage, does not invalidate the tender. A legal right may be demanded by way of condition. 7 N. W. 188; 23 N. E. 282; 118 N. Y. 165; 22 N. E. 155; 115 N. Y. 297; 39 N. Y. 486; 3 N. E. 189; 5 Am. St. Rep. 435; 84 Wis. 218; 54 N. W. 500; 59 N. H. 46; 33 S. W. 596.

*McCulloch & McCulloch*, for appellee.

One who redeems after a foreclosure sale must pay the whole amount of the mortgage debt, although the land sold for a less sum. Jones, Mort. § 1075; 53 Ark. 69; 57 Ark. 198; 40 S. W. 704; 57 Ark. 533; Kerr's Supp. to Wiltsie, Mortg. Foreclosures, pp. 1627–8, 1635; Pingrey, Mort. p. 2011, § 2175: *ib.* p. 2020, §2184; 14 Wall. 491; 4 Paige, 58; 23 Minn. 13; 6 Mich. 522; 7 Cush. 220; 7 Gray, 148; 130 U. S. 684; *ib.* 43; 74 Ind. 479; 116 Ind.. 268; 14 Ill. 263; 12 So. 163; 16 O. St. 193; Rorer, Jud. Sales, § 1178; 29 N. E. 563; 29 N. E. 35; 70 Iowa, 589; 9 Cal. 413; 52 Cal. 644. The agreement on the face of the mortgage, whereby the mortgagors waived their *statutory* rights to redeem, is binding upon them. Jones, Mortg. § 1542 *et seq.; ib.* § 1051. A tender coupled with a condition is no defense. 2 Benj. Sales, § 1074 *et. seq.*, and note; 1 Add. Cont. § 357, and note; 2 Wharton, Cont. § 997; 34 Vt. 201; 39 *id.* 51; 43 Vt. 439; 52 Minn. 83; 107 Mo. 50; 25 Am. & Eng. Enc. Law, 912; 7 Wait, Act. & Def. 588; Jones, Mort. § 900; 1 Cranch, 321; 55 Ind. 397; 12 Mass. 450; 4 Pick. 51; 9 Metc. 42; 38 Fed. 926.

RIDDICK, J., (after stating the facts). This case presents the following question: When land is sold under a power contained in a mortgage for an amount less than the debt secured by the mortgage, does the redemption allowed by the statute from such sale leave the premises still subject to the mortgage lien, or does such redemption restore the land to the grantor relieved of both the sale and the mortgage lien? In other words, can an absolute redemption be effected in such a case by tender of the amount for which the property sells at the mortgage sale, together with interest and costs of sale, or is it necessary that the full amount of the mortgage debt shall be paid?

The statute provides that real property sold under a mortgage "may be redeemed by the mortgagor at any time within one year from the sale thereof by payment of the amount for which said property is sold, together with ten per cent. interest thereon and costs of sale." Sand. & H. Dig., § 5111. If the effect of a redemption under this statute, when the property has

sold for less than the mortgage debt, is to restore the mortgage lien, it is obvious that there . is no limit to the number of sales that may be made under the same mortgage. So long as any balance of the debt remained unpaid, and the mortgagor redeems, the mortgagee may, if this be the meaning of the act, continue to sell the property, thus piling up the costs against the mortgagor.

Mortgages and deeds of trust to secure debts can, in this state, be drawn so that the creditor may bid at the mortgage sale (*Ellenbogen* v. *Griffey*, 55 Ark. 268), and this is now usually done; but, under such a construction of the statute, the creditor would be encouraged to bid less than the value of the property; for in that event, if the mortgagor redeemed, the creditor could still hold and sell the property for any balance remaining unpaid, while, if the necessities of the mortgagor prevented him from redeeming, the creditor would obtain the property for less than its value, and have the remainder of the debt as a personal claim against the mortgagor.

There is little reason why a creditor should be allowed thus to subject the property of his debtor to repeated sales under his mortgage; and a construction which permits it should not be adopted unless clearly required by the language of the statute. *Hervey* v. *Krost*, 116 Ind. 268. On the contrary, it would seem to be good public policy to allow the creditor to sell only once under his mortgage, and to make it to his interest to secure a fair price for the property at such sale. *Anderson* v. *Anderson*, 129 Ind. 572. Poverty may prevent the debtor from bidding the value of this property, for he must pay or secure the price he bids; but the creditor is usually in a position to make the property bring its value, at least to the extent of the debt for which he exposes it for sale. If the mortgage does not permit him to bid at the sale, he can foreclose in a court of equity, and thus place himself in a position to make the property bring its value. It is not therefore unjust, as between him and the mortgagor, to presume that the amount for which he permits the property to sell represents its true value. And this is the basis upon which rests the redemption statute. For the purpose of redemption, the statute conclusively presumes that the price for which the property

sells at the mortgage sale represents its actual value, and it allows the mortgagor, within a reasonable time after the sale, to redeem and reclaim the property by substituting therefor its money value, as determined by such facts.

There is nothing in the statute to support the contention that when a redemption is made the mortgage lien is restored, and remains upon the property for any unpaid balance of the debt. We do not believe that the legislature intended any such result. Previous to the passage of this act allowing a redemption, the mortgage lien did not exist after the sale under the power contained in the mortgage. After such sale, the mortgage was *functus officio*, except as a part in the chain of title from the mortgagor to the purchaser at the mortgage sale, for the mortgage lien was exhausted and discharged by the sale. *Makibben* v. *Arndt*, 88 Ky. 180. Now, the statute does not attempt to make any change in the law in this respect, but, recognizing that the mortgage lien was terminated by the sale, and that afterwards there was not a mortgagee holding under a mortgage, but a purchaser holding under a sale, it provides for redemption from such sale only. The language of this statute granting the right to redeem upon payment of amount for which the property sells, with interest and costs of sale, means, we think, an absolute redemption, and the mortgage lien is not revived by such redemption. *Anderson* v. *Anderson*, 129 Ind. 573; *Hervey* v. *Krost*, 116 *ib.* 268; *Makitben* v. *Arndt*, 88 Ky. 180; *Todd* v. *Davey*, 60 Iowa, 532.

Counsel for appellee contend that the case of *Wood* v. *Holland* (53 Ark. 69, S. C. 57 Ark. 198) is opposed to this view, but we do not think so. In that case, as in this, there had been a sale of land on credit, and the vendee had executed a mortgage to a trustee to secure payment of the purchase money. The land was sold by the trustee under a power contained in the deed, and purchased by the vendor for less than the debt secured by the mortgage. The vendor took possession of the land under his purchase at the mortgage sale. Afterwards the mortgagor commenced a suit in equity to redeem, and to compel the vendor "to account for the rents and profits, and for other relief." The court, in its first opinion in that case, upon which the two later opinions were based, conceded the

right of a mortgagor under our statute to redeem land sold under a mortgage by tendering the amount bid with interest and costs, whether the debt secured be for the purchase money or not; but the court said that "when the party goes into a court of equity to redeem, he must offer to pay the whole purchase money due." *Wood* v. *Holland,* 53 Ark. 69.

The court did not, in that opinion, nor in either of the two subsequent opinions rendered in said case, state the reason for requiring the plaintiffs to pay the whole amount of the purchase money when he goes into a court of equity to redeem. But in the case of *German National Bank* v. *Barham,* '57 Ark. 536, it was said that courts of equity in such cases required the payment of the whole debt, upon the principle that he who seeks equity must do equity;" and this seems to be the correct basis for the decisions in *Wood* v. *Holland, supra.* While it may seldom be necessary for a mortgagor to resort to a court of equity to enforce his right to redeem after sale, that being a right conferred by statute, and concerning which he has a remedy at law, yet if, by reason of the fact that an account must be stated, or if, for the purpose of removing a cloud from his title, or to obtain other equitable relief, he comes into a court of equity to redeem, he must submit to such conditions as are imposed by the general rules of equity. And it is an ancient rule of equitable jurisprudence that a court of equity will not confer its equitable relief upon the party seeking its aid unless he will concede and provide for all the equitable rights justly belonging to the adversary party, and growing out of the subject-matter of the suit. (1 Pom. Eq. Jur. § 385.) Now, in the case of *Wood* v. *Holland,* the mortgagor was asking the aid of a court of equity to allow him to redeem, and to compel the creditor to account for the rents and profits of land, while on his part he was offering to pay less than half the purchase money he owed the creditor for the land he sought to redeem. The land was the subject-matter of the action to redeem, and, the creditor having a legal demand against the mortgagor for the price of the land, it was right, and in accordance with the rules of equity, that the court should refuse to lend its aid to the mortgagor in the matter of redeeming and reclaiming the land, and calling the creditor to account, until he had offered to pay the balance due for the land.

*Anthony* v. *Anthony*, 22 Ark. 479; *Ruddell* v. *Ambler*, 18 *ib*. 369; *Loney* v. *Courtnay*, 25 Neb. 580; *Comstock* v. *Johnson*, 46 N. Y. 615; *Booth* v. *Hoskins*, 75 Cal. 271; Pomeroy, Eq. Jur. §§ 385, 393. Whether this rule would be applied to other mortgages than those to secure the purchase money of the land mortgaged is immaterial to consider.

The appellant in this case is not asking the aid of a court of equity. He is a defendant in an action at law, and therefore the decision in *Wood* v. *Holland* does not support the contention that he cannot redeem without paying the whole debt, for the decision in that case is, we think, based on the rule that "he who asks equity must do equity."

To avoid confusion, it must always be remembered that the question here concerns the statutory right to redeem after sale, and has no reference to the equity of redemption before sale,— a right originating with courts of equity, and enforced only upon equitable principles. In actions to enforce the mortgagor's equity of redemption before foreclosure, the rule is that the whole debt must be paid. "The debt being a unit, no party interested in the premises can compel the mortgagor to accept a portion, and to relieve the property *pro tanto* from the lien." 3 Pom. Eq. Jur. § 1220. The same rule is applied, even after foreclosure, when one having an interest in the mortgaged property—such, for instance, as a junior incumbrance—is not made a party to the foreclosure proceedings, and afterwards comes into court for the purpose of enforcing his equity of redemption. He must pay or tender the whole mortgage debt. In such cases, "the party offering to redeem proceeds upon the hypothesis that as to him the mortgage has never been foreclosed, and is still in existence. Therefore he can only lift it by paying it." *Collins* v. *Riggs*, 14 Wall. 491; *Hosford* v. *Johnson*, 74 Ind. 479. But the rules applied by courts of equity in enforcing the equitable rights of redemption before foreclosure, and the decisions based thereon, have little bearing upon the question here, which is one of statutory construction only. After considering the able argument of counsel for appellee, and the many cases cited by him, our conclusion, as before stated, is that the contention of appellants on this point is correct. He tendered a sum sufficient to cover

the amount for which the property sold at the sale under the mortgage, with interest at ten per cent. and costs of sale, and this was all the law required.

But this tender was made upon the condition that appellee and the Trunkeys should waive their claim to a lien upon the property for any further sum by virtue of the mortgage. Appellant Fields demanded that Danenhower and the Trunkeys should sign a writing in which was the following stipulation: "We hereby agree with said Richard Fields that, by virtue of his payment of said sum of $1,000 to us, all the liens or other claims on said lands ever held by us, or either of us, as the representatives of the said Frank Trunkey, deceased, are released, and the said Fields redeems said lands free from any further lien or claim of interest thereon or therein by us or either of us." The appellees and the Trunkeys admitted that they had no claim against the land, except that existing by virtue of the mortgage and the sale thereunder. But the mortgage was executed by appellants to secure the purchase price they had agreed to pay for the land. At the sale under the mortgage the land sold for much less than the amount due for the purchase price, and appellee and the Trunkeys in good faith contended that the appellants could not redeem without paying the full amount due for the land. There was a difference of opinion between the parties as to the law on this point, and the object of appellant Fields in requiring the receipt and agreement was to compel both appellee and the Trunkeys, in the event they accepted the tender, to abandon their claim of a lien against the land for the balance of the purchase money. This balance represented a considerable sum; and while, in view of the unsettled state of the law on that point, we can appreciate the caution which led appellant to impose this condition, we yet have reached the conclusion that it was one he had no right to impose, and it rendered the tender of no effect. It is well established that a tender must be without conditions to which the creditor can have a valid objection. *Noyes* v. *Wyckoff*, 114 N. Y. 204; *Moore* v. *Norman*, 52 Minn. 83; S. C. 38 Am. Dec. 526; *Wood* v. *Hitchcock*, 20 Wend. (N. Y.) 47; Jones, Mortgages, § 900; 25 Am. & Eng. Enc. Law, 912; Benj. Sales (Bennett's Ed.), 733.

If appellant had only asked appellee to sign a receipt showing the amount of money paid, this would have been a condition to which appellee would have had no reason to object, for it would have barred none of his rights. But appellants had not paid the mortgage debt in full, and there was no statutory or legal requirement that appellee and the Trunkeys should enter a satisfaction in full on the record, or grant a release, or agree that they would not prosecute their claim for a lien for the balance due. Whether the acceptance of the sum tendered would revest the title of the land in the mortgagor freed from the mortgage lien for the unpaid balance of the purchase money was a question which appellee and the Trunkeys had the right to litigate; and to demand of appellee that, in accepting the money tendered, he and the Trunkeys should sign an agreement which would estop and prevent them from litigating that question was a condition which appellants had no right to couple with his tender. *Noyes* v. *Wyckoff*, 114 N. Y. 204.

For these reasons, we are of the opinion that the circuit court correctly ruled that appellants did not make a valid tender, and that no redemption was made. The judgment in favor of plaintiff was therefore right, and is affirmed.

BUNN, C. J., (dissenting). I concur in the opinion of the court in this case, in so far as it sustains the mortgagor's right to redeem by paying the sum bid at the foreclosure sale and the percentage and costs provided by statute; but I dissent from that portion of the decision which holds that the tender made by the mortgagor was insufficient and therefore unavailable.

The case of *Noyes* v. *Wyckoff*, 114 N. Y. 208, is relied upon to sustain the decision of the court. The court of appeals of New York said: "The tender is best tested by the effect its acceptance would have had upon the defendant, and it needs no argument to show that, had it been accepted, it must have been upon the terms offered, viz., in payment of the debt and extinguishment of the lien of the chattel mortgage, for the words used have no other meaning. This was a condition which plaintiff had no right to attach to the acceptance. He could not say, 'I offer you this money in pay-

ment of your debt, but if you take it you must extinguish your lien upon the iron ore.' Whether its acceptance would extinguish the mortgage was a question which the defendant had a right to litigate, and to demand that, in accepting the money offered, defendant should create an estoppel, which would prevent him from litigating the amount due on the mortgage, was a condition which the plaintiff could not attach to the offer, and which, being coupled with it, made the tender bad." That was a case where the defendant held a chattel mortgage on a quantity of iron ore lying upon the farm owned by the mortgagor, to secure a debt or rather several debts of uncertain amounts. The mortgagor sold the farm to a third party, afterwards plaintiff in this suit, subject to existing liens. The plaintiff-purchaser tendered the defendant-mortgagee $3,000 in payment and extinguishment of the lien of the mortgage, and defendant refused to accept it. It was conceded, in an action for the conversion of the ore (which had in fact been appropriated by the defendant), that the tender was sufficient in amount, but the refusal to accept it was because of insufficiency in form. Held, that the tender was insufficient, because it stipulated for an extinguishment of the lien, as well as for the satisfaction of the debt, which question of lien the plaintiff had a right to litigate, and thus the tender was coupled with a condition. The reasoning of the court would be applicable to every case of ordinary tender in payment of debt, for in every case the creditor has a right to litigate the question of amount, unless he considers that the amount of the tender is correct; and yet, if he refuses to accept a tender of the proper amount, he will lose in the question of tender, and will be compelled to take the tender and pay costs not covered by the tender. The distinction attempted to be drawn between rules governing the tender of the debt, and the tender of the amount to secure which the mortgage lien exists, involves a nicety which I feel incapable of exactly comprehending. After all, it may be that the court in that case only meant to hold that, notwithstanding the admission of the correctness of the amount of the mortgage lien being fully covered by the tender during the progress of the trial, yet, since the amount of the lien was undeter-

mined when the tender was made, the purchaser had the right to litigate, and that therefore the tender was not good.

In *Halpin* v. *Phenix Ins. Company*, 118 N. Y. 175, a later case, the same court said: "It is claimed that the tender was not effectual to entitle plaintiff to the judgment, for the reason that it was conditioned on the execution by defendant of a satisfaction of the mortgage. The cases cited by the learned counsel for the appellant do not sustain this claim. The distinction must be observed between cases in which terms are added not embraced in the contract or which the acceptance of the tender would cause the creditor to admit, and those [cases] in which the conditions are such as the debtor, on payment of the debt, has a right to insist upon and to which the creditor has no right to object." Such undoubtedly is the true rule.

In this state, when a mortgage debt is paid, it carries with it the satisfaction of the mortgage lien; and hence, by statute, the mortgagee, at the demand of the mortgagor, is required to indorse in writing, signed by himself or his duly authorized agent, on the margin of the record of the mortgage, a satisfaction of the same in full, and a neglect to do so subjects him to a penalty. The execution of such a quittance, receipt or release was all that was contained in the alleged condition accompanying the tender in the case at bar, and the condition, of course, was no more than the mortgagee was bound by law to perform in any event. The statutes referred to are §§ 5096, 5097 and 5098, Sand. & H. Dig.

The controversy, stripped of all mere technical coatings, is whether or not, in order to redeem his land from the foreclosure sale to the purchaser, the mortgagor should be required to pay the amount of the bid, the costs and statutory percentage, or the amount of the mortgage debt, costs and interest. The purchaser contended that he should pay the latter sum, and because he did not tender that sum his tender was refused, and for no other reason. This court has decided that his tender was for the proper amount, and it is inconsistent to hold the tender insufficient, I think. So far as the mere form of the tender is concerned, it is not perceived that the case of a tender made to the mortgagee as purchaser

is different, in effect, from that of a tender to a third party as purchaser. I think the tender should have been held good.